UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 21-2426 _____     _____ Caption [use short title] _____

Motion for: Judicial Notice of FDA Deficiency Letters _____

_____

_____

Set forth below precise, complete statement of relief sought:

Magellan requests that the Court take judicial notice

of two deficiency letters issued by FDA dated

June 26, 2020, and December 18, 2020.

_____

_____

_____

Magellan Technology, Inc. v. FDA

MOVING PARTY: Magellan Technology, Inc.     OPPOSING PARTY: United States Food and Drug Administration

☐ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Eric N. Heyer     OPPOSING ATTORNEY: David Hixson

[name of attorney, with firm, address, phone number and e-mail]

Thompson Hine LLP     United States Department of Justice, Civil Division

1919 M Street, NW, Suite 700     Room 6400, 450 5th Street, NW

Washington, DC 20036     Washington, DC 20001

Court- Judge/ Agency appealed from: United States Food and Drug Administration

Please check appropriate boxes:                           FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                          INJUCTIONS PENDING APPEAL:

Has movant notified opposing counsel (required by Local Rule 27.1):   Has this request for relief been made below?       ☐ Yes ☐ No
☑ Yes  ☐ No (explain): _____                                Has this relief been previously sought in this court?  ☐ Yes ☐ No
_____                                                        Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:                                _____
☐ Unopposed  ☐ Opposed ☑ Don't Know                                   _____
Does opposing counsel intend to file a response:                      _____
☑ Yes  ☐ No  ☐ Don't Know                                             _____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☑ Yes ☐ No If yes, enter date: Oral argument took place on February 6, 2023

Signature of Moving Attorney:

Eric N. Heyer _____ Date: February 9, 2023   Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| MAGELLAN TECHNOLOGY, INC., | ) | No. 21-2426 |
| | ) | |
| Petitioner, | ) | On Petition for Review |
| | ) | of a Final Marketing |
| v. | ) | Denial Order by the |
| | ) | United States Food and |
| UNITED STATES FOOD AND DRUG | ) | Drug Administration |
| ADMINISTRATION, | ) | |
| | ) | Oral Argument Held |
| Respondent. | ) | February 6, 2023 |
| | ) | |

**PETITIONER'S MOTION FOR JUDICIAL NOTICE
OF FDA DEFICIENCY LETTERS**

Petitioner Magellan Technology, Inc. ("Magellan"), pursuant to Federal Rule of Appellate Procedure 27, respectfully moves the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of portions of two premarket tobacco product application ("PMTA") deficiency letters issued by Respondent Food and Drug Administration ("FDA") of which Magellan only very recently was made aware. The first PMTA deficiency letter is dated June 26, 2020, while the second deficiency letter is dated December 18, 2020. Copies of the relevant excerpts from

1

both letters are attached to the Declaration of Eric N. Heyer attached hereto as Exhibit A.[1]

The June 26, 2020 deficiency letter was issued to Logic Technology Development LLC ("Logic") and was publicly filed on February 3, 2023, as part of the joint appendix in *Logic Technology Development LLC v. FDA*, Case No. 22-3030 (3d Cir.). The December 18, 2020 deficiency letter was issued to R.J. Reynolds Vapor Company ("R.J. Reynolds") and the relevant excerpt was publicly filed on February 8, 2023, as an attachment to a declaration in support of a motion for stay in *R.J. Reynolds Vapor Company v. FDA*, Case No. 23-60037 (5th Cir.).

FDA's June 26, 2020 deficiency letter to Logic, which was applying for marketing authorization for its non-tobacco-flavored electronic nicotine delivery system ("ENDS") products, states, in relevant part, as follows:

> . . . . Because flavored ENDS products pose particular risks for youth initiation and progression to regular ENDS use, it is important to have evidence suggesting that these risks can be offset by a potential benefit to adult users. Provide scientific evidence and rationale to demonstrate whether these flavor variants may facilitate adult smokers switching to [the subject flavored products] at a rate beyond that of tobacco- or menthol-flavored products, which may have lower youth appeal. This information may include, but is not limited to:
>
> > a.  Data or information from studies demonstrating uptake/switching among adult smokers using flavored

---

[1] The undersigned has advised counsel for FDA of Magellan's intent to file this motion. Counsel for FDA indicates that FDA does not take a position on the motion, but intends to file a response in due course.

variants of the products relative to uptake/switching among tobacco- or menthol-flavored users.

b. Data or information from studies generating appeal (e.g., preference or intention to use) of flavored variants (fruit and fruit-combination flavored products) compared to tobacco- or menthol-flavored variants among adult users interested in switching to ENDS.

Similarly, the relevant excerpt from FDA's December 18, 2020 deficiency letter to R.J. Reynolds states as follows:

[The subject flavored products] lack information to demonstrate that the new products would increase the likelihood of complete switching among adult smokers, compared to their tobacco or menthol varieties. . . . Flavored ENDS pose particular risks for youth initiation, as they are more likely to be used by youth ENDS users (compared to adults), are commonly cited as a reason for use, and have been shown to be associated with increased risk of progressing to regular ENDS use. Given the known risk to youth of marketing flavored ENDs, provide evidence to demonstrate that the use of these flavored products (other than menthol) increases the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products. Provision of this information will enable FDA to better assess the impact of these products on population health. This information may include, but is not limited to:-

- Data or information from studies demonstrating uptake/switching among adult smokers using flavored variants of the products relative to uptake/switching among adult smokers using non-flavored (i.e., tobacco and menthol) variants.
- Data or information from studies demonstrating the level of underage appeal or use of these flavored variants.

Consideration of the two deficiency letters is appropriate because "the procedural validity of [FDA's] action remains in serious question" and the deficiency letters provide necessary background information to "determine whether

3

[FDA] considered all the relevant factors." *Daikin Applied Americas Inc. v. EPA*, 39 F.4th 701, 716 (D.C. Cir. 2022) (internal citations and quotations omitted). FDA issued these deficiency letters more than two months *before* and more than three months *after* the September 9, 2020 deadline for Magellan and other applicants to submit their PMTAs for their flavored ENDS products. Of particular significance for Magellan's pending petition, unlike Logic and R.J. Reynolds, Magellan received no deficiency letter apprising it of FDA's request for switching studies comparing Magellan's flavored ENDS products against its tobacco-flavored ENDS products. Treating similarly situated applicants differently is a hallmark of arbitrary and capricious agency action. *See*, *e.g.*, *Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 178 (D.C. Cir. 1997) ("[A]n agency may not treat like cases differently" (internal quotations and citations omitted).); *Airmark Corp. v. FAA*, 758 F.2d 685, 691 (D.C. Cir. 1985) ("Deference to agency authority or expertise, however, is not a license to . . . treat like cases differently" (internal quotation and citation omitted).).

Further, FDA gave no public notice of the agency's demand for data from comparative efficacy studies comparing flavored ENDS products to tobacco-flavored ENDS products until a press release on August 26, 2021, less than two weeks before FDA issued Magellan its marketing denial order based on the lack of such comparative efficacy data. *See General Elec. Co. v. United States EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (holding that fair notice of an agency's interpretation

4

requires that regulated parties be able to identify with "ascertainable certainty" the standards with which an agency expects them to conform); *accord Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 4 (D.C. Cir. 1987) (holding FCC denial of license application arbitrary and capricious because agency failed to "give full notice of its interpretation" of its applicable regulations).

Additionally, FDA's December 18, 2020 deficiency letter issued to R.J. Reynolds suggests that, at least as late as three months after the PMTA submission deadline, FDA was still willing to accept data or information from single-point-in-time studies like those FDA had recommended in its PMTA Guidance, JA237, regarding underage appeal or use of the specific flavored ENDS products at issue in lieu of longitudinal comparative efficacy studies. In later issuing Magellan a marketing denial order, however, FDA took the position that such studies were not sufficiently "reliable," JA34-36, and ignored, *inter alia*, evidence from Magellan's single-point-in-time focus group studies that strong majorities of participants found Magellan's pretzel graham and blue razz flavors to target adults who were over 21 years old, JA418. *See N.Y. Pub. Int. Res. Grp. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005) ("Agencies are free to change course as their expertise and experience may suggest or require, but when they do so they must provide a 'reasoned analysis indicating that prior *policies and standards* are being deliberately changed, not casually ignored'" (citation omitted; emphasis added)).

5

For the foregoing reasons, the Court should grant Magellen's motion and take judicial notice of the two FDA deficiency letters.

Respectfully submitted,

THOMPSON HINE LLP

By: _____ /s/ Eric N. Heyer _____
Eric N. Heyer
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com

*Counsel for Petitioner Magellan Technology, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the Motion for Judicial Notice of FDA Deficiency Letters complies with the type-volume requirement set forth in Federal Rule of Appellate Procedure 27(d)(2)(A). The word count feature found in Microsoft Word reports that the Motion contains 1,144 words.

The Motion complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, size 14 font.

/s/ Eric N. Heyer
Eric N. Heyer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk and served via the Court's ECF / ECM system on all counsel of record.

      <u>     /s/ Eric N. Heyer     </u>
Eric N. Heyer
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com

*Counsel for Petitioner Magellan Technology, Inc.*

**EXHIBIT A**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| MAGELLAN TECHNOLOGY, INC., | ) | No. 21-2426 |
| | ) | |
| Petitioner, | ) | On Petition for Review |
| | ) | of a Final Marketing |
| v. | ) | Denial Order by the |
| | ) | United States Food and |
| UNITED STATES FOOD AND DRUG | ) | Drug Administration |
| ADMINISTRATION, | ) | |
| | ) | Oral Argument Held |
| Respondent. | ) | February 6, 2023 |
| | ) | |

## DECLARATION OF ERIC N. HEYER

I, Eric N. Heyer, hereby declare as follows:

1.      I am a partner with the law firm Thompson Hine LLP and am lead counsel for Petitioner Magellan Technology, Inc.

2.      I submit this Declaration in support of Petitioner's Motion for Judicial Notice of FDA Deficiency Letters, and make this Declaration based on my personal knowledge.

3.      On February 7, 2022, using the federal courts' PACER system, I downloaded the redacted FDA deficiency letter issued to Logic Development LLC dated June 26, 2020, that is attached hereto as <u>Exhibit A-1</u> from the electronic docket of *Logic Technology Development LLC v. FDA*, Case No. 22-3030, pending before the United States Court of Appeals for the Third Circuit, where the redacted

letter was included in the volume of the Joint Appendix filed as docket entry number 75. The redactions in the deficiency letter are as found in the electronic docket.

4.     On February 8, 2023, using the federal courts' PACER system, I downloaded the redacted motion for stay that included in its supporting appendix an excerpt from an FDA deficiency letter issued to R.J. Reynolds Vapor Company dated December 18, 2020, that is attached hereto as Exhibit A-2 from the electronic docket of *R.J. Reynolds Vapor Company v. FDA*, Case No. 23-60037, pending before the United States Court of Appeals for the Fifth Circuit. The Declaration of Christopher Junker and the redacted excerpt from the FDA deficiency letter that was an exhibit thereto were filed as part of docket entry number 62. The redactions in Exhibit A-2 are as found in the electronic docket.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 9, 2022, in the City of Washington, District of Columbia.

                                              /s/ Eric N. Heyer        
                                              Eric N. Heyer

**EXHIBIT A-1**



U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
www.fda.gov

June 26, 2020

**DEFICIENCY**

Logic Technology Development, LLC
Attention: ███████████, Head of Corporate Affairs and Communications
500 Frank W Burr Blvd Suite 24
Teaneck, NJ 07666

**FDA Submission Tracking Numbers (STNs):** PM0000527–PM0000541

Dear Ms. ████:

We reviewed your August 19, 2019, PMTAs[1] and concluded that additional information is needed for a marketing granted order determination for the tobacco products identified in Appendix A. Refer to Appendix B for a list of amendments received in support of your applications.

**We request that within 14 calendar days from the date of this letter you inform us of how much time you need to provide a complete response to all deficiencies.**

We have preliminarily determined that these applications do <u>not</u>, in their present form, support a positive scientific determination. We will evaluate the information in your timely response to this letter prior to issuing an appropriate order. We expect that no more Deficiency letters will be issued for these applications.

The following information is necessary for FDA to make a scientific determination:

1.  All of your PMTAs provide information on the design parameters for the new products. However, your PMTAs do not include all of the design parameters needed to fully characterize the products, which allow for a determination that the products meet the requirements of section 910(b)(1) of the FD&C Act. In order to adequately characterize the products, it is necessary to evaluate key design parameters. Provide the manufacturing data sheet specifications (MDSS) or the target specification and upper and lower range limits for *all* of the following design parameters for each new product unless otherwise noted:

    a.  Coil diameter (mm) [range limits for PM0000538- PM0000541]
    b.  E-liquid viscosity (cP) [PM0000530, PM0000532, and PM0000533 only]
    c.  E-liquid boiling point (°C)
    d.  Amount of wicking material (mg)
    e.  Wicking rate (mm/min)
    f.  Total coil length (mm) [uncoiled]
    g.  Coil surface area (mm$^2$)
    h.  Filter plug pressure drop [range limits only for PM0000527-PM0000529]

---

[1] Premarket Tobacco Product Applications (PMTAs) submitted under section 910 of the Federal Food, Drug, and Cosmetic Act (FD&C Act) and received on August 19, 2019.

FDA-LOGICTECHNOLOGY- 000207

     i.   Filter length [range limits only for PM0000527-PM0000529]

For each of the above parameters, provide the necessary data on a per unit of measurement of product basis (e.g., amount of wicking material should be reported in mg per atomizer tank/cartridge). For each set of range limits, identify if the range limits correspond to process control parameters or product control parameters, as appropriate.

2.  All of your PMTAs include design parameter specifications but do not include data confirming that the target specifications are met. In order to confirm the target specifications are met, provide the test data (i.e., measured values of design parameters), including test protocols, quantitative acceptance criteria, data sets, and a summary of the results for *all* of the following design parameters for each product unless otherwise noted:

     a.  Coil diameter (mm) [PM0000538- PM0000541 only]
     b.  E-liquid viscosity (cP) [PM0000530, PM0000532 and PM0000533 only]
     c.  E-liquid boiling point (°C)
     d.  Amount of wicking material (mg)
     e.  Wicking rate (mm/min)
     f.  Total coil length (mm) [uncoiled]
     g.  Coil surface area (mm$^2$)

For each of the above parameters, provide the necessary data on a per unit of measurement of product basis (e.g., amount of wicking material should be reported in mg per atomizer tank/cartridge).

Certificates of analysis (COAs) from the material supplier may satisfy this deficiency.  If you choose to address this deficiency by providing COAs for any of the parameters listed above, the COAs must include target specification, quantitative acceptance criteria, parameter units, test data average value, and either the standard deviation of the test data or the minimum and maximum values of the test data. If you choose to satisfy this deficiency by providing a COA, the COA should be a complete, unaltered COA from the material supplier.

Additionally, for the design parameters listed above that were tested according to national or international standards, identify the standards and state what deviations, if any, from the standards occurred. Provide a justification for the sampling protocol used to obtain the test data and state why the data is representative of the final finished product.

3.  All of your PMTAs indicate that you do not have target specifications and upper and lower range limits for the following design parameters (as stated during your facility inspections):

     a.  Coil temperature (°C)
     b.  Coil temperature cut-off (°C)
     c.  Current cut-off (mA)
     d.  Inhaled aerosol temperature (°C)

FDA-LOGICTECHNOLOGY- 000208



███████████████████████████████ Atomizer coil temperature may affect toxicant emissions and nicotine delivery. A difference in inhaled aerosol temperature may affect nicotine yields and the risk of thermal inhalation injuries. As such, provide the target specifications, range limits, and test data for each of the above parameters. Inhaled aerosol temperature should be reported as average values and range limits of the test data. Include the test protocols, quantitative acceptance criteria, data sets, and a summary of the results for your test data.

4. ████████████████████████████████████████████████
████████████████████████████████████████
████████████████████ however, you do not provide the test protocol for your draw resistance testing. Full test data includes test protocols, quantitative acceptance criteria, data sets, and a summary of the results. Provide the full test protocol for your draw resistance testing.

5. ████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████ Further, you did not provide validation that the products will not output voltage to the coil if the air pressure is below and above the upper and lower limits. This information is needed to determine whether the puff activation safety feature is effective to limit coil heating outside of the indicated air pressure boundaries. Provide verification and validation documentation demonstrating performance of the puff activation feature at the upper and lower air pressure limits. Also, provide verification and validation documentation to demonstrate that the air pressure sensor will not detect puffs beyond these limits.

6. ████████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
██████████████ Provide information as to the processes used to prevent potentially damaged battery cells from entering Logic PMTA products.

7. █████████████████████████████████████████████████, but does not provide validation as to how the battery and the product with battery are kept within its NOR. Provide justification or documentation on how the battery and Logic Vapeleaf product with the battery are kept within the NOR for voltage, current, and temperature for charging and discharging.

8. PM0000527–PM0000532, PM0000536–PM0000538, and PM0000541 ███████████
████████████████████████████████████████
███████████████████:

FDA-LOGICTECHNOLOGY- 000209

    a. PM0000527-PM0000531: ████████████████████████████
████████████████████████████████████████████████████
███████████████████████

    b. PM0000527–PM0000529 ████████████████████████████████

    c. PM0000529–PM0000531: ███████████████████████████████
████████.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████ Provide test protocols for testing the product current and voltage (for PM0000527-PM0000531) and scientific evidence and rationale for the data discrepancies in ████████████████ (PM0000527–PM0000529) and ████████████ ██████ (PM0000529–PM0000531).

9. PM0000531 provides a gap analysis for IEC 60335 during the inspection; however, the gap analysis is missing current rating for the battery as well as internal test data and assessment protocols for failed IEC 60335 clauses. Provide documentation that you resubmitted for IEC 60335 certification and state when the results will be available or provide a more detailed gap analysis with internal test data and assessment documentation for failed IEC 60335 clauses and the battery current rating.

10. All of your PMTAs provide various stability studies for each of your finished products and all bulk e-liquids used to fill your products. However, some of these data sets are incomplete:

    a. ██████████████████████████████████████████
████████████████████████████████████████████

    b. ███████████████████████████████████████████
████████████████████████████████████████████
█████████████████

    c. ████████████████████████████████████████████
███████████████████████

    d. █████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

In addition, some finished product stability data may be insufficient to support the validity of each product's established shelf-life. ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████-
█████████████████████████ Provide complete data sets for all stability testing for all Logic products (PM0000527–PM0000541). In addition, provide a

scientific rationale for why the data you provided are sufficient to support each product's designated shelf-life, including why ███████████ do not raise concern about the designated shelf-lives.

11. PM0000532–PM0000537 ██████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

Because nicotine aerosol yields impact nicotine delivery to users, having an accurate representation of anticipated nicotine aerosol yields is important for determining whether a product is appropriate for the protection of public health. Provide documentation to show ████████████████████████████████████
███████████████████████. ████████████████████
████████████████████████████████████
██████████████████████. If data from one study should be considered more accurate than the other, state which study should be considered more accurate and provide scientific evidence and rationale for why this study is more accurate.

12. ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████. FDA recommends providing HPHC and other constituent data over a range of possible product and user characteristics by generating aerosol with both non-intense and intense puff regimens. ██████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████. Provide HPHC and other constituent data for all Logic products generated under an intense puff regimen, based on a range of product characteristics and anticipated user behaviors. For example, you may want to consider the maximum puff duration cut-off product characteristics when choosing a more intense puff regimen. In addition, provide scientific rationale for why the chosen intense puff regimen provides FDA with a broad range of possible product characteristics and user behaviors for all Logic products.

13.  ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████ You did not include gross pathology and
histopathology data for heart tissues after repeated exposure of any of the Logic Vapeleaf,
Logic Pro, or Logic Power products. Scientific literature has associated ENDS use with
cardiovascular effects. Provide scientific evidence and rationale on the potential
cardiovascular effects of all Logic PMTA products.

14.  ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

15.  ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████ Provide ways
you plan to mitigate these types of misuse.

16.  All of your PMTAs lack a description of adequate measures to mitigate risk, access, or appeal
to youth of these ENDS products (e.g., through marketing restrictions, product design
features or controls, or other restrictions). In particular, your PMTAs describe practices for
age verification for online purchases, ███████████████████
████████████████████. However, the online age verification protocol only requires
an affirmative response that one is 21 or older, and no other verification mechanisms are in
place, which means that anyone willing to click the "21+" button is allowed on the website,
without adequate age verification. ████████████████████████
██████████ Given the known risk to youth of ENDS, provide additional evidence that other
mechanisms to minimize the risk to youth exposure, appeal, and/or access are in place.

17. PM0000527, PM0000532, PM0000533, and PM0000538, for products with fruit- or fruit-combination flavors, lack information to demonstrate whether these flavors help adult smokers switch from combusted cigarettes to Logic products. Because flavored ENDS products pose particular risks for youth initiation and progression to regular ENDS use, it is important to have evidence suggesting that these risks can be offset by a potential benefit to adult users. Provide scientific evidence and rationale to demonstrate whether these flavor variants may facilitate adult smokers switching to Logic products at a rate beyond that of tobacco- or menthol-flavored products, which may have lower youth appeal. This information may include, but is not limited to:

    a.  Data or information from studies demonstrating uptake/switching among adult smokers using flavored variants of the products relative to uptake/switching among tobacco- or menthol-flavored users.

    b.  Data or information from studies demonstrating appeal (e.g., preference or intention to use) of flavored variants (fruit and fruit-combination flavored products) compared to tobacco- or menthol-flavored variants among adult users interested in switching to ENDS.

18. We have identified issues in two of the Tobacco Product Master Files (TPMFs) for which additional information or clarification is needed by FDA to complete our evaluation of PM0000527-PM0000529 and PM0000532-PM0000537. These issues are being conveyed separately to the TPMF owners. If you have questions related to the TPMFs, we encourage you to contact the TPMF owners. We remind you that the TPMF owners' complete and timely response or lack thereof may impact FDA's review of your PMTAs.

In addition to the deficiencies listed above, we request the following information to determine whether to prepare an Environmental Impact Statement (EIS) or Finding of No Significant Impact (FONSI). The information requested is <u>not</u> required for a scientific determination to receive marketing authorization; however, we may be precluded or delayed from issuing orders until the below items are resolved. Information requested in this section is not necessary for a complete response to this letter:

19. You submitted three Environmental Assessments (EAs), one for each PMTA product system; however, a separate EA is required for each PMTA product. Submit a separate EA for each STN with relevant information for the specific PMTA product and update the date that each revised EA is prepared. Separate EAs are used to assess the potential environmental impact of each of the new products.

20. Your EAs are marked confidential; however, the EA is a public document. 21 CFR 25.51(a) states that "Data and information that are protected from disclosure by 18 U.S.C. 1905 or 21 U.S.C. 331(j) or 360j(c) shall not be included in the portion of environmental documents that is made public. When such data and information are pertinent to the environmental review of a proposed action, an applicant or petitioner shall submit such data and information separately in a confidential section and shall summarize the confidential data and information in the EA to the extent possible." Submit revised EAs that are not confidential and summarize confidential data and information to the extent possible in accordance with 21 CFR 25.51(a). You may choose to include the detailed confidential information in a confidential appendix.

FDA-LOGICTECHNOLOGY- 000213

21. Your EAs are titled as memoranda and not EAs. In your revised EAs, remove the memorandum title and the "to" and "from" lines on page 3 of your documents.

22. Your EAs describe the manufacturing locations for the various components of your new products, however, you do not describe where the products are packaged together for sale to consumers. In your revised EAs, describe where and how the new products are packaged together prior to being imported into the United States. If the new products are not packaged together, state that they are only sold separately. If the new products are packaged together in the United States, provide the facility location where that occurs and detailed information regarding the facility's compliance with local, state, and federal environmental regulations. This information is used to evaluate the potential environmental impacts of manufacturing the new products.

23. Your EAs lack current market volumes for the new products. In your revised EAs, provide the current market volume of the new products. This information is used to evaluate the potential environmental impacts of manufacturing, use, and disposal of the products.

24. Your submitted EAs do not address environmental justice. In your revised EAs, address the potential disproportionate impacts of manufacturing, use, and disposal of the PMTA products on low-income, minority, or Indian tribe populations (disproportionate impacts mean more than 50% of the impacted population is low-income, minority, or Indian tribes). "Consider the composition of the affected area, to determine whether minority populations, low-income populations, or Indian tribes are present in the area affected by the proposed action and if so whether there may be disproportionately high and adverse … effects on minority populations, low-income populations, or Indian tribes." (Environmental Justice, Guidance Under National Environmental Policy Act, Council on Environmental Quality, 1997). For example, if the manufacturing facility is in the U.S. and is surrounded by low-income, minority, or Indian tribe populations, identify if any new chemicals would be released to the environment due to the proposed action and what effects that release may have on the surrounding populations. For use and disposal after use, state whether the PMTA products would have a disproportionate impact on low-income, minority, or Indian tribe populations via second hand vapor or littering.  If no environmental justice issues from manufacturing, use, or disposal after use of the PMTA products are expected, provide a statement indicating so. For guidance on environmental justice considerations see: https://www.epa.gov/sites/production/files/2015-02/documents/ej_guidance_nepa_ceq1297.pdf and https://www.epa.gov/environmentaljustice/environmental-justice-and-national-environmental-policy-act and https://www.epa.gov/sites/production/files/2015-02/documents/ej_guidance_nepa_ceq1297.pdf. Information regarding impacts on environmental justice populations is used to assess the potential environmental impacts of the PMTA products.

25. Your EAs include reference to take-back and recycling programs, however, limited information is provided. In your revised EAs, provide detailed information regarding your take-back and recycling programs for the new products. Include how the consumer is made aware of the program, if consumers are provided incentives to bring back used products, and how products are recycled or disposed of once brought back to the company. This

JA 3017

FDA-LOGICTECHNOLOGY- 000214

information is used to evaluate the potential environmental impacts of disposal of the new products.

26. Your EAs include a section titled "Atmospheric" and a footnote attached to that section heading that is unclear and not relevant. EAs do not address impacts on the atmosphere but instead address potential impacts on air quality. In your revised EAs, change the header for the "Atmospheric" section to "Air Quality" and remove footnote 17. Impacts of the new products on air quality are used to evaluate the potential environmental impacts of manufacturing, use, and disposal of the products.

When responding to this letter, you should send an amendment with a cover letter that includes the following text in your subject line: "**RESPONSE TO DEFICIENCY LETTER for PM0000527 - PM0000541**." Refer to Appendix C for best practices in submitting a response to a Deficiency letter.

**If you intend to respond to these deficiencies, clearly state (by STN) that you have responded to each numerated deficiency above. Please be advised that an inadequate resolution of the deficiencies described above, or a late response, will likely result in marketing denial orders.**

Amendments, which contain a substantial amount of new information (e.g., detailed new analyses of previously submitted data, new manufacturing information), may extend the time required for review. FDA generally does not intend to review unsolicited amendments that would require significant review time by the agency. In the circumstance the time required for review is extended, FDA will notify you by letter.

We encourage you to submit all regulatory correspondence electronically via the CTP Portal[2,3] using eSubmitter.[4] Alternatively, submissions may be mailed to:

> Food and Drug Administration
> Center for Tobacco Products
> Document Control Center (DCC)
> Building 71, Room G335
> 10903 New Hampshire Avenue
> Silver Spring, MD 20993-0002

The CTP Portal and FDA's Electronic Submission Gateway (ESG) are generally available 24 hours a day, seven days a week; submissions are considered received by DCC on the day of successful upload. Submissions delivered to DCC by courier or physical mail will be considered timely if received during delivery hours on or before the due date[5]; if the due date falls on a weekend or holiday, the delivery must be received on or before the preceding business day. We are unable to accept regulatory submissions by e-mail.

---

[2] For more information about CTP Portal, see
https://www.fda.gov/tobacco-products/manufacturing/submit-documents-ctp-portal
[3] FDA's Electronic Submission Gateway (ESG) is still available as an alternative to the CTP Portal.
[4] For more information about eSubmitter, see http://www.fda.gov/ForIndustry/FDAeSubmitter
[5] https://www.fda.gov/tobacco-products/about-center-tobacco-products-ctp/contact-ctp

                                    FDA-LOGICTECHNOLOGY- 000215

If you have any questions, please contact Carlos Suarez, MPH, Regulatory Health Project Manager, at (301) 796-5453 or Carlos.Suarez@fda.hhs.gov.

Sincerely,

Digitally signed by Megan J. Schroeder -S
Date: 2020.06.26 11:27:53 -04'00'

Megan J. Schroeder, Ph.D.
Branch Chief, Behavioral and Clinical Pharmacology
Division of Individual Health Science
Office of Science
Center for Tobacco Products

**Enclosures:**
      Appendix A – New Tobacco Products Subject of This Letter
      Appendix B – Amendments Received for These Applications
      Appendix C – Best Practices for Submitting a Response to a Deficiency Letter

FDA-LOGICTECHNOLOGY- 000216

**Appendix A**
New Tobacco Products Subject of This Letter

- PM0000527:  Logic Vapeleaf Menthol Purple Cartridge/Capsule Package
- PM0000528:  Logic Vapeleaf Menthol Green Cartridge/Capsule Package
- PM0000529:  Logic Vapeleaf Regular Cartridge/Capsule Package
- PM0000530:  Logic Vapeleaf Regular Cartridge/Capsule Package[6]
- PM0000531:  Logic Vapeleaf Tobacco Vapor System
- PM0000532:  Logic Pro Berry Mint e-Liquid Package
- PM0000533:  Logic Pro Cherry e-Liquid Package
- PM0000534:  Logic Pro Menthol e-Liquid Package
- PM0000535:  Logic Pro Tobacco e-Liquid Package
- PM0000536:  Logic Pro Capsule Tank System
- PM0000537:  Logic Pro Capsule Tank System
- PM0000538:  Logic Power Cherry e-Liquid Package
- PM0000539:  Logic Power Menthol e-Liquid Package
- PM0000540:  Logic Power Tobacco e-Liquid Package
- PM0000541:  Logic Power Cherry Rechargeable Kit[7]

---

[6] This tobacco product is also known as Logic Vapeleaf Menthol Green Cartridge/Capsule Package and Logic Vapeleaf Menthol Purple Cartridge/Capsule Package.
[7] This ENDS component is also known as Logic Power Menthol Rechargeable Kit and Logic Power Tobacco Rechargeable Kit.

                                    FDA-LOGICTECHNOLOGY- 000217

**Appendix B**
Amendments Received for These Applications

| | |
|---|---|
| **Date of Submission:** | September 25, 2019 |
| **Date of Receipt:** | September 25, 2019 |
| **Reviewed:** | Yes |
| **Applications being amended:** | All[8] |
| **Status:** | Active |
| **Brief Description:** | Response to FDA's September 18, 2019 information request |
| **Date of Submission:** | October 22, 2019 |
| **Date of Receipt:** | October 22, 2019 |
| **Reviewed:** | Yes |
| **Applications being amended:** | All[8] |
| **Status:** | Active |
| **Brief Description:** | Response to FDA's October 18, 2019 information request |
| **Date of Submission:** | November 1, 2019 |
| **Date of Receipt:** | November 1, 2019 |
| **Reviewed:** | Yes |
| **Applications being amended:** | All[8] |
| **Status:** | Active |
| **Brief Description:** | Response to FDA's October 29, 2019 information request |
| **Date of Submission:** | November 18, 2019 |
| **Date of Receipt:** | November 18, 2019 |
| **Reviewed:** | Yes |
| **Applications being amended:** | All[8] |
| **Status:** | Active |
| **Brief Description:** | Final Site Inspection Agenda |
| **Date of Submission:** | December 20, 2019 |
| **Date of Receipt:** | December 20, 2019 |
| **Reviewed:** | Yes |
| **Applications being amended:** | All[8] |
| **Status:** | Active |
| **Brief Description:** | Final Site Inspection Logistics |
| **Date of Submission:** | February 27, 2020 |
| **Date of Receipt:** | February 27, 2020 |
| **Reviewed:** | Yes |
| **Applications being amended:** | PM0000532 – PM0000541 |
| **Status:** | Active |
| **Brief Description:** | New product label information |

[8] This amendment applies to all STNs subject to this Deficiency letter.

**Appendix C**
Best Practices for Submitting a Response to a Deficiency Letter

We recommend that your submission include consecutively numbered pages and be organized as follows:

- List each number and full deficiency text as stated in this letter, and provide your response immediately following the deficiency.
    - Your response should address all STNs identified in a deficiency; if different information/data is being submitted for different STNs in your response to a given deficiency, the response should clearly correlate information/data to the applicable STNs.
    - If your response applies to a subset of STNs (e.g., 5 out of 10) and you would like us to start scientific review upon receipt of your response, provide a statement to that effect in your cover letter.
    - Submit data as an appendix or appendices and reference the appropriate appendix/appendices in your response.
    - Submit publications as an appendix or appendices and reference the appropriate appendix/appendices in your response.
- If resubmitting information (e.g., tables) to correct earlier omissions/errors, clearly identify what information has been revised. FDA will consider that new information to supersede the information provided in the original submission, except for measured values (e.g., test data, HPHC data). For measured values, applicants should provide rationale for why the updated data are appropriate for consideration. If rationale is not provided, measured values will be combined with previous measured values for evaluation.
- If you have already submitted any of the information requested in the deficiency, identify the date of the prior submission, page numbers, and line numbers where the requested information is located.

**EXHIBIT A-2**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

R.J. REYNOLDS VAPOR COMPANY,
*et al.*,

                         Petitioners,

      v.

UNITED STATES FOOD AND DRUG
ADMINISTRATION, *et al*.,

                         Respondents.

CASE NO. 23-60037

_____

## DECLARATION OF CHRISTOPHER JUNKER

I, CHRISTOPHER JUNKER, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

## BACKGROUND

1.     I am Vice President, Scientific and Regulatory Affairs, at RAI Services Company ("RAIS"), a position that I have held since May 2021. RAIS coordinates regulatory compliance for the subsidiary companies of Reynolds American Inc., including R.J. Reynolds Vapor Company ("RJRV"). I have been employed by RAIS from June 2017 to the present. Prior to that, I was employed by R.J. Reynolds Tobacco Company ("RJRT"), another subsidiary of Reynolds American, Inc., for almost 6 years. I began as a scientist with the RJRT (2011-2013), and have served in other roles in RJRT and RAIS since then:

1

- Senior Scientist at RJRT (2013-2014)

- Lead Manager, Product Services at RJRT (2015-2016)

- Senior Manager, Product Services at RJRT (2016-2017)

- Director, Scientific & Regulatory Affairs at RAIS (2017-2019)

- Senior Director, Scientific & Regulatory Affairs at RAIS (2019-2021)

2.      During my time at RAIS' Science and Regulatory Affairs Division, I have worked on and become knowledgeable of RJRV's premarket tobacco product applications ("PMTAs") for Vuse products.

3.      This declaration describes the procedural history of RJRV's PMTAs for its menthol Vuse Vibe and menthol Vuse Ciro products and the United States Food and Drug Administration's ("FDA") denials of those applications.

4.      RJRV manufactures electronic nicotine delivery systems products under the brand name Vuse and distributes those products for sale in the United States. RJRV also sells Vuse products directly to age-verified adult consumers online.

5.      RJRV markets and sells four lines of Vuse products in the United States—Solo, Vibe, Ciro, and Alto.

6.      RJRV currently markets tobacco- and menthol-flavored Vuse products.

7.      RJRV submitted premarket tobacco product applications for each line of Vuse products.

## VUSE APPLICATIONS

8.      RJRV submitted PMTAs for Vuse Solo on October 9, 2019, PMTAs for Vuse Vibe on March 31, 2020, PMTAs for Vuse Ciro on April 14, 2020, and PMTAs for Vuse Alto on September 3, 2020. Each of the applications (which covered tobacco, menthol, and several other flavored versions) spanned over 150,000 pages. Excerpts of the Vibe applications are attached as Exhibit A.

9.      Based on RJRV's review of FDA guidance and FDA's public statements, RJRV understood that its applications would not need to include long-term studies—i.e. longitudinal studies of six months or more—given that FDA stated that such studies were not expected or required. RJRV also understood that its applications were not required to include a comparison of the effectiveness of RJRV's menthol-flavored products in assisting adult smokers to quit smoking to the effectiveness of tobacco-flavored e-cigarettes in doing the same. Specifically, FDA stated that "in general, FDA does not expect that applicants will need to conduct long term studies to support an application." FDA, *Premarket Tobacco Product Applications for Electronic Nicotine Delivery Systems (ENDS)* 13 (June 2019), https://tinyurl.com/3rmz9ab4. FDA explained that "long term" studies were those "that are conducted over six months or longer." *Id.* FDA also suggested that manufacturers had discretion to choose similar products to compare their products

3

to, as long as the products were ones consumers considered "interchangeable" and "likely to be used in the same manner." *Id.*

10. FDA issued one deficiency letter regarding RJRV's Vuse Vibe and Ciro applications. It issued that letter on December 18, 2020. FDA did not issue any other deficiency letter for the Vuse Vibe and Ciro applications.[1]

11. That deficiency letter is attached as Exhibit B.

12. In the letter, FDA asked RJRV to "provide evidence to demonstrate that the use of [the Vuse Vibe and Ciro] flavored products (other than menthol) increases the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products." The letter never stated that the same evidence was required for the menthol- or tobacco-flavored Vuse Vibe and Ciro applications. And FDA granted the tobacco-flavored Vuse Vibe and Ciro applications even though those applications did not contain this evidence. Based on FDA's exclusion of the menthol-flavored Vuse Vibe and Ciro applications from that portion of the deficiency letter, RJRV understood that its applications for menthol-flavored Vuse Vibe and Ciro did not need to contain product-specific studies showing that those products outperform others in terms of getting adult smokers to switch.

---

[1] FDA did issue one correction to its deficiency letter on February 17, 2021. That correction did not deal with the deficiency discussed in this declaration.

## FDA GRANTS AUTHORIZATION FOR TOBACCO-FLAVORED PRODUCTS

13.    On October 12, 2021, FDA issued a Marketing Granted Order for tobacco-flavored Vuse Solo.

14.    FDA's Marketing Granted Order for tobacco-flavored Vuse Solo is attached as Exhibit C.

15.    On May 12, 2022, FDA issued Marketing Granted Orders for tobacco-flavored Vuse Vibe and tobacco-flavored Vuse Ciro.

16.    FDA's Marketing Granted Order for tobacco-flavored Vuse Vibe and Ciro is attached as Exhibit D.

## FDA DENIES AUTHORIZATION FOR MENTHOL-FLAVORED VIBE & CIRO

17.    On January 24, 2023, FDA denied RJRV's applications for menthol Vuse Vibe and menthol Vuse Ciro.

18.    FDA's Marketing Denial Order for menthol Vuse Vibe and menthol Vuse Ciro is attached as Exhibit E.

19.    Excerpts of FDA's Technical Project Lead Memorandum related to the January 24, 2023 Marketing Denial Order are attached as Exhibit F.

## VUSE ALTO AND MENTHOL VUSE SOLO

20.    As noted above, RJRV submitted its application for Vuse Alto on September 3, 2020. It also submitted an application for menthol-flavored Vuse Solo on October 9, 2019. Both applications remain pending with FDA.

## CONFIDENTIALITY OF CERTAIN INFORMATION

21.    RJRV considers the organization and contents of its PMTAs, as well its communications with and responses from FDA regarding its PMTAs, to be highly confidential, nonpublic business information.

22.    RJRV and FDA have long agreed to treat the sensitive information contained in the applications as confidential. RJRV submitted its Vuse PMTAs in reliance on FDA's representations that they would remain confidential. And RJRV has not publicly revealed the information in its applications.

23.    RJRV's PMTAs contain information about the engineering, design, components, construction, chemical makeup, ingredients, and specifications of RJRV's products, and details about how RJRV compiled its PMTAs. Disclosure of this confidential, proprietary business information (even as to the PMTAs' tables of contents) would allow competitors to discover what RJRV included in its PMTAs and replicate those without incurring the substantial costs that RJRV incurred— meaning that RJRV would lose the competitive advantage it has gained through the development of its unique PMTA process. Further, this disclosure would give

6

competitors insight into RJRV's business decisions and the design of its products, similarly harming its competitive advantage.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January **31**, 2023.

CHRISTOPHER JUNKER

**TAB 6**

Ex. B to Decl. of Christopher Junker,
Excerpt of Deficiency Letter (Dec.
18, 2020)



PM0000638–PM0000643 and PM0000714–PM0000718 lack information to demonstrate that the new products would increase the likelihood of complete switching among adult smokers, compared to their tobacco or menthol varieties. In particular, your PMTAs included information showing that established cigarette smokers showed significantly greater interest in menthol and tobacco than all other flavors, while never users showed greater interest in mint, mango, and tropical flavors than menthol and tobacco and tobacco and menthol are not among the most appealing flavors to non-users. Flavored ENDS pose particular risks for youth initiation, as they are more likely to be used by youth ENDS users (compared to adults), are commonly cited as a reason for use, and have been shown to be associated with increased risk of progressing to regular ENDS use. Given the known risk to youth of marketing flavored ENDS, provide evidence to demonstrate that the use of these flavored products (other than menthol) increases the likelihood of complete switching among adult smokers relative to tobacco or menthol-flavored products. Provision of this information will enable FDA to better assess the impact of these products on population health. This information may include, but is not limited to:-

- Data or information from studies demonstrating uptake/switching among adult smokers using flavored variants of the products relative to uptake/switching among adult smokers using non-flavored (i.e. tobacco and menthol) variants.
- Data or information from studies demonstrating the level of underage appeal or use of these flavored variants.